FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

20 JUL 30 PM 3:04

CLERK J. Hodge
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| ANTHONY GALVIN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 118-208 |
| | * | |
| AUGUSTA-RICHMOND COUNTY, GEORGIA, | * | |
| | * | |
| Defendant. | * | |

O R D E R

Before the Court is Defendant Augusta-Richmond County's (the "County") motion for summary judgment. (Doc. 13.)  The Clerk has given Plaintiff Anthony Galvin notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and the consequences of default.  Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied.  The motion has been fully briefed and is ripe for decision.  For the following reasons, the motion is granted.

I. **BACKGROUND**

A. Background and Procedural History

At the time relevant to this litigation, Plaintiff was a 55-year-old firefighter working for the Augusta, Georgia Fire Department (the "Department"). (See Pl.'s Resp. to Def.'s Statement of Material Facts, Doc. 15-2, ¶ 1.) He began working with the Department in 1990 and was eventually promoted to lieutenant in 2003. (See id., ¶¶ 42-45; Doc. 15-3, at 8 (letter promoting Plaintiff to Lieutenant).) Plaintiff's work evaluations graded his performance as satisfactory or better. (See Pl.'s Performance Evaluations, Doc. 15-3, at 9-38.) Plaintiff maintained his rank of lieutenant until his retirement on August 1, 2018. The circumstances leading up to Plaintiff's retirement are at issue in this case.

On June 1, 2018, Fire Chief Christopher E. James ("Chief James") recommended to the Human Resources Director that Plaintiff be demoted to the position of firefighter. (See Pl.'s Resp. to Def.'s Statement of Material Facts, ¶ 61.) Chief James' reasons for demotion were:

> (1) [Plaintiff] possessed one or more firearms in fire stations on one or more occasions; (2) [Plaintiff] lied about having one or more firearms in fire stations on one or more occasions during the investigation of this matter; (3) [Plaintiff] was going to allow a subordinate to receive disciplinary action for making false statements even though the statement(s) were true in

2

>  order to protect himself; (4) [Plaintiff] took fire department apparatuses across the county line numerous times in order to obtain a reduced meal; (5) [Plaintiff] caused subordinates to take fire department apparatuses across the county line numerous times in order for him to obtain a reduced meal; (6) [Plaintiff] claimed to have no knowledge of the location of the county line even though the territory he was responsible for abutted the county line; (7) [Plaintiff] failed to perform and/or document fire hydrant maintenance; and (8) [Plaintiff] neglected his training responsibilities to his subordinates.

(James Aff., Doc. 13-2, ¶ 34.) These actions are prohibited by the Department's Code of Conduct and Code of Ethics. (See Pl.'s Resp. to Def.'s Statement of Material Facts, ¶¶ 32-36.) The Code of Ethics also requires employees to "conduct themselves with honesty and professionalism and to be responsible for one's own actions and the consequences thereof." (Id., ¶ 33.)

The Personnel Policy and Procedures Manual, or "PPPM," governs disciplinary actions in the Department. (See id., ¶¶ 7-15.) The PPPM provides for an opportunity to be heard following a recommendation for demotion prior to the demotion becoming effective. (See id., ¶ 63.) Before Plaintiff's hearing, his attorney at the time negotiated an agreement with Defendant's counsel to postpone the hearing indefinitely and allow Plaintiff to retire without penalty. (See id., ¶¶ 64-65.) Plaintiff retired on August 1, 2018. (See id., ¶ 47.)

During the investigation into Plaintiff's conduct, which is discussed below, Sergeant King took over Plaintiff's duties. (See

3

Doc. 13-7, ¶ 15.) Sergeant King is older than Plaintiff. (See id.) Lieutenant Tammy Thain – at the time in her early forties – transferred to Plaintiff's station following his retirement. (James Dep., Doc. 13-5, at 56; Galvin Dep., Doc. 13-4, at 147; Galvin Aff., Doc. 15-7, ¶ 4.)

Plaintiff filed this suit on December 3, 2018, alleging that Defendant discriminated against him under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 521 *et seq.* (the "ADEA"). (See Compl., ¶ 1.) He alleges that Defendant demoted him and constructively terminated him, his replacement was substantially younger than him, and that he was qualified for his position. (See id., ¶¶ 35-37.)

B. Additional Facts Relevant to the Burden Shifting Analysis

As will be discussed below, a burden shifting analysis applies to cases alleging age discrimination in violation of the ADEA. The following facts are relevant to that analysis.

*1. Facts Related to Defendant's Nondiscriminatory Reason*

Chief James' eight nondiscriminatory reasons for recommending Plaintiff's demotion are listed above. The events that led up to the proposed demotion began on March 12, 2018, when Deputy Chief Taylor recommended to Chief James that Sergeant King receive a written reprimand for making false statements. (See Doc. 13-2, at 29-32.) Sergeant King had reported to his superior that Plaintiff had threatened him during a heated discussion and said to Sergeant

4

King, "[d]on't come back here, I have a gun and I'm not afraid to use it." (Id.; see also King Statement, Doc. 13-2, at 35.) Sergeant King also reported that he saw Plaintiff with firearms in the station on several occasions. (See King Statement.) Firefighter Phelon corroborated that statement to Chief James. (See James Aff., Doc. 13-2, ¶ 27.)

Chief James denied the recommended discipline against Sergeant King because he realized Deputy Chief Taylor had not talked to any other firefighters when investigating the issue. (See James Dep., at 30.) Chief James then instructed Deputy Chief Taylor to engage in a more thorough investigation of Sergeant King's allegations. (See id.) Following his second investigation, Deputy Chief Taylor recommended to Chief James that Plaintiff be demoted for having firearms in the station, directing fire engines out of the county without authorization, failing to maintain hydrants, and failing to train at the station. (See Doc. 13-2, at 43.) Plaintiff admitted to taking the fire engine across county lines and failing to document hydrant testing. (See Galvin Dep., at 85-87.) These reasons were incorporated into Chief James' reasons for recommending Plaintiff's demotion.

2. *Plaintiff's Evidence of Pretext*

Plaintiff attempts to show that Defendant's nondiscriminatory reasons were pretextual. First, Firefighter Phelon sent Plaintiff a letter warning Plaintiff that he was under investigation and

5

that Deputy Chief Taylor pressured Phelon into signing a pre-written statement regarding Plaintiff's alleged transgressions involving firearms at the station. (See Phelon Letter, Doc. 15-5, at 5.) Another firefighter, Jerome Ricot, also stated that Deputy Chief Taylor pressured him to sign a similar statement, which he refused to do. (See Ricot Statement, Doc. 15-5, at 7-8.)

Plaintiff also cites to Chief James' discussion of Plaintiff's pension eligibility with Captain Coleman. Captain Coleman was apparently concerned that Chief James might fire Plaintiff, who would then lose his pension. (See James Dep., at 36-37.) Captain Coleman told Chief James that Plaintiff could not afford to retire at fifty-five years old because he did not have enough accredited service. (See Coleman Dep., Doc. 15-7, at 39-40.) Chief James responded that he did not think Plaintiff would be terminated. (See James Dep., at 37.)

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving

6

party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id. at 322-23. When the movant does not bear the burden of proof at trial, it may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Celotex Corp., 477 U.S. 317). The movant cannot satisfy its initial burden

by merely declaring that the non-moving party cannot meet its burden at trial. Id. at 608.

If — and only if — the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56. In reaching its conclusions herein, the

8

Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in this case.

### III. DISCUSSION

A. The *McDonnell Douglas* Burden Shifting Analysis

A plaintiff can establish unlawful age discrimination under the ADEA with direct or circumstantial evidence. See <u>Kragor v. Takeda Pharm. Am., Inc.</u>, 702 F.3d 1304, 1308 (11th Cir. 2012). "When such a claim is based on circumstantial evidence, [courts] analyze the allocation of burdens and the presentation of proof under the framework articulated in <u>McDonnell Douglas Corp v. Green</u>, 411 U.S. 792 (1973)." <u>Id.</u>

<u>McDonnell Douglas</u> requires a plaintiff to first establish a *prima facie* case of discrimination by showing:

> (1) that []he was a member of the protected group of persons between the ages of forty and seventy; (2) that []he was subject to adverse employment action; (3) that a substantially younger person filled the position that []he sought or from which []he was discharged; and (4) that []he was qualified to do the job for which []he was rejected.

<u>Id.</u> (quoting <u>Damon v. Fleming Supermarkets of Fla., Inc.</u>, 196 F.3d 1354, 1359 (11th Cir. 1999)). If the plaintiff can establish a *prima facie* case, the defendant must then respond "with evidence of a legitimate, nondiscriminatory reason for the adverse

9

employment action." Id. (citing McDonnell Douglas, 411 U.S. at 802-03).

If the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff, the plaintiff then has a chance to show that the defendant's explanation is pretext for discrimination. See id. The plaintiff can demonstrate pretext by producing or identifying previously produced evidence that would permit a reasonable factfinder to conclude that discrimination rather than the defendant's explanation was the real reason for the adverse employment action. See id. at 1308-09. Doing so may preclude summary judgment in favor of the employer. See id.

B. Burden Shifting Analysis[1]

Because the Court finds the McDonnell Douglas burden-shifting analysis dispositive, Plaintiff's *prima facie* case is not discussed.[2]

---

[1] The Eleventh Circuit applies the law of "Title VII, ADEA, and ADA cases interchangeably." Bass v. Lockheed Martin Corp., 287 F. App'x 808, 810 (11th Cir. 2008) (citing Pennington v. City of Huntsville, 261 F.3d 1262, 1269 (11th Cir. 2001)).

[2] District courts sometimes assume a plaintiff has made out a *prima facie* case when the burden-shifting analysis is dispositive. See, e.g., Crawford v. Carrol, 529 F.3d 961, 976 (11th Cir. 2008) ("[W]e assume, as did the district court, that [plaintiff] has made out a *prima facie* case . . . ."); Coutu v. Martin Cty. Bd. of Cty. Comm'rs., 47 F.3d 1068, 1073 (11th Cir. 1995); King v. Ferguson Enters., Inc., 971 F. Supp. 2d 1200, 1218 (N.D. Ga. 2013).

Defendant has produced evidence of legitimate, nondiscriminatory reasons for recommending Plaintiff's demotion. All eight of Chief James' reasons for recommending Plaintiff's demotion are nondiscriminatory in nature and relate to Plaintiff's violation of Department policies. Thus, a genuine issue of material fact exists as to whether Defendant discriminated against Plaintiff, and the burden shifts to Plaintiff to show that Defendant's reasons are mere pretext for discrimination. See McDonnell Douglas, 411 U.S. at 802-03. To do so, Plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." Brooks v. Cty. Comm'n, 446 F.3d 1160, 1163 (11th Cir. 2006) (emphasis in original) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).

Most of Plaintiff's pretext evidence is aimed at showing the falsity of Defendant's reasons. Plaintiff cites to Sergeant King's complaint against Plaintiff which King at one point retracted. Plaintiff also refers to the firefighters' statements that they were pressured into signing statements corroborating King's original accusation regarding Plaintiff's possession of firearms in the station. However, those facts only relate to one of Chief James' stated reasons, namely, Plaintiff's possession of firearms in the station. Plaintiff does not attempt to refute Chief James' other reasons, and in fact admitted to crossing the county line with the fire apparatus and failing to document his hydrant

11

testing, both of which are against Department policy. Thus, Plaintiff has not shown that Defendant's reasons for firing him are false.

As for evidence that discrimination was the real reason for the recommended demotion, Plaintiff's only evidence that age was considered was Chief James' awareness of Plaintiff's retirement eligibility. Captain Coleman brought Plaintiff's retirement eligibility to Chief James' attention, but there is no evidence that Chief James discriminated against Plaintiff because of his age.[3] No reasonable fact finder could conclude from Chief James' mere awareness of Plaintiff's retirement eligibility that "discriminatory animus was the 'but-for' cause" of any potentially adverse employment action. See Sims v. MVM, Inc., 704 F.3d 1327, 1332 (11th Cir. 2013) (quoting Gross v. FBL Fin. Servs., Inc., 557

---

[3] The evidence indicates the opposite. If Chief James considered Plaintiff's age at all, it was to Plaintiff's benefit in that Chief James ensured Plaintiff would be able to retire without penalty. This is evidence from Chief James' deposition testimony:

> Q. What was discussed during your call with [Captain] Coleman?
> A. When he said that he would not want [Plaintiff] to, you know, . . . effectively lose his pension if he was terminated. I think my response at that time was I don't think it's going to come to that.
> Q. And why did you not think it would come to that?
> A. I mean, I was not seeking for [Plaintiff] to lose his employment. . . .

(James Dep., at 37.)

U.S. 167, 176 (2009)). Because Plaintiff has failed to demonstrate that Defendant's nondiscriminatory reasons are false and that Defendant was actually motivated by Plaintiff's age, summary judgment for Defendant is appropriate.

## IV. CONCLUSION

Upon the foregoing, Defendant's motion for summary judgment (Doc. 13) is **GRANTED**. The Clerk shall **ENTER JUDGMENT** for Defendant. The Clerk is further **DIRECTED** to **CLOSE** this case and **TERMINATE** all outstanding motions and deadlines.

**ORDER ENTERED** at Augusta, Georgia this 30th day of July, 2020.

```
_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
```